*Exhibit 1*

# DISTRICT OF COLUMBIA
## OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
Student Hearing Office
810 First Street, N.E., 2nd Floor
Washington, DC 20002

| | | |
|---|---|---|
| A          and B          D         , on behalf of | | |
| B          D         , | | |
| Petitioners, | | Hearing Officer: Peter B. Vaden |
| v. | | Case No: 2013-0211 |
| DISTRICT OF COLUMBIA PUBLIC SCHOOLS, | | |
| Respondent. | | |

## ORDER ON PETITIONER'S MOTION
## TO ESTABLISH CURRENT PLACEMENT

On May 5, 2013, Petitioners filed a motion to establish the Student's "current educational placement" within the meaning of "stay-put" provision of the Individuals with Disabilities Education Act, 20 U.S.C. §1415(j) ("IDEA"). Petitioners submit that Student's current educational placement should be:

    a. A minimum of 10 hours per week of home instruction and/or authorization for Lindamood-Bell tutoring, per the March 9, 2012 hearing officer's determination ("2012 HOD");

    b. A minimum of five hours per week of occupational therapy ("OT") with Katherine Phillips
of The Floortime Center (also per the 2012 HOD); and

    c. A minimum of four hours per month of speech/language therapy services, a minimum of two hours per week of behavioral support services; and a minimum of four hours per month of parent counseling and training.

On May 9, 2013, Respondent DCPS filed its opposition to Petitioner's motion. DCPS appears to argue that because it is voluntarily providing interim services, I should not make a finding as to Student's current educational placement.

ANALYSIS

Senior U.S. District Judge Urbina provided a thorough discussion the IDEA's stay-put provision in his decision in *Alston v. District of Columbia*, 439 F.Supp.2d 85 (D.D.C. 2006):

> Because the "IDEA guarantees parents of disabled children an opportunity to participate in the identification, evaluation, or educational placement of their children", *Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C.Cir.2000), parents who disagree with the educational placement or the conclusions set forth in the IEP may request an administrative "impartial due process hearing." 20 U.S.C. § 1415(f). Parents who object to the hearing officer's decision may bring suit in state or federal court. 20 U.S.C. § 1415(i)(2). During the pendency of these judicial or administrative proceedings, if "the State or local educational agency and the parents otherwise agree, the child shall remain in his then-current education placement." 20 U.S.C. § 1415(j). This procedural safeguard is commonly known as the "stay put provision" and its purpose is to prohibit "state or local school authorities from unilaterally excluding disabled children from the classroom . . . during the pendency of review proceedings." *Honig v. Doe*, 484 U.S. 305, 306, 308, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).
>
> A parent can invoke the stay put provision when the school system proposes a "a fundamental change in, or elimination of, a basic element of the [then-current education placement]." *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C.Cir.1984). A parent moving for a stay put injunction "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement." *Id.*
>
> Although the IDEA does not define the term "then-current educational placement," the meaning of the term "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." *Bd. of Educ. of Cmty High Sch. Dist. No. 218*, 103 F.3d at 548; *see also Spilsbury v. District of Columbia*, 307 F.Supp.2d 22, 26-27 (D.D.C.2004) (explaining that "the IDEA clearly intends 'current educational placement' to encompass the whole range of services that a child needs" and that the term "cannot be read to only indicate which physical school building a child attends"). Accordingly, if a child's then-current educational placement is not available, the school system must provide the student with placement in a similar program during the pendency of administrative and judicial proceedings. *Knight v. Dist. of Columbia*, 877 F.2d 1025, 1029 (D.C.Cir.1989); *McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C.Cir.1985); *Block v. Dist. of Columbia*, 748 F.Supp. 891, 898 n. 9 (D.D.C.1990).

2

*Id.* at 90-92. *See, also, District of Columbia v. Vinyard*, 2012 WL 5378122 (D.D.C.) (D.D.C.2012); *K.D. ex rel. C.L. v. Department of Educ., Hawaii*, 665 F.3d 1110, 1118 (9th Cir. 2011) (We have interpreted "current educational placement" to mean "the placement set forth in the child's last implemented IEP.")

In the present case, Student's last implemented IEP was developed in June 2009. 2012 HOD at 19. Under that IEP Student was on a home program, from October 21, 2009 until August 29, 2011. The home program consisted of 21 hours of service per week, including tutoring, speech, counseling services and occupational therapy. The services were provided by DCPS. *Id.* at 5-6. This home program ended after August 29, 2011 when Student began attending a private special education day school, without a new IEP. *Id.* at 6-7.

In Case No. 2012-0020, these parties appeared before Hearing Officer Michael Lazan on Petitioners' claims that DCPS had denied Student a FAPE by failing to provide an IEP from August 2011 through October 11, 2011 and that DCPS' proposed October 11, 2011 IEP was inappropriate for Student. Hearing Officer Lazan found in the 2012 HOD, that DCPS had denied Student a FAPE from August 2011 through the 2011-2012 school year. *Id.* at 20-23. He further held, *inter alia,* that tutoring services provided by Judith Ross and Occupational Therapy services provided by Katherine Phillips, after October 11, 2011,were appropriate services for Student, and ordered DCPS to reimburse Petitioners' expenses for those services, *Id.* at 24; that 5 hours per week of OT therapy for three months by Ms. Phillips would be an appropriate compensatory education remedy for denial of FAPE, *Id.* at 26; and that Petitioners' requested placement of Student at Meridell Achievement Center, a residential treatment center in Texas was not appropriate, *Id.* at 29; Hearing Officer Lazan ordered DCPS to convene Student's IEP team to conduct new assessments of Student and to create a new educational program for him,

3

*Id.* at 31. As interim relief, Hearing Officer Lazan ordered DCPS to provide Student 1:1 home instruction for two hours per day, five days a week. After 30 calendar days, DCPS was to consider attempting to provide 1:1 instruction to Student in a school building. *Id.* at 31.

Since the 2012 HOD was issued, DCPS developed an IEP for Student in July 2012 for full-time special education services in a non-public day school and a revised IEP in October 2012 for a residential placement. It was not possible to find a day school that was able and willing to implement the July IEP. The October 2012 IEP has not been implemented either. The parties disagree over why, but not over the fact that the October 2012 IEP is not an implemented IEP.

Under the IDEA, if the decision of a hearing officer in a due process hearing agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents for purposes of the IDEA's stay-put provision. *See* 34 CFR § 300.518(d); *District of Columbia v. Vinyard* 2012 WL 5378122, 6 (D.D.C.2012). However, the 2012 HOD decision did not agree with Petitioners that a change of Student's placement to Meridell Achievement Center was appropriate. Notwithstanding, as U.S. District Judge Kollar-Kotelly noted in *Vinyard, supra,* several courts have found that, even where the child never had a functioning IEP, an administrative determination in favor of the parents constituted an implied agreement as to a placement for stay-put purposes, so long as the hearing officer made findings on the merits that the school system had failed to provide a FAPE and that the private program chosen by the parents was appropriate. *Id.* 2012 WL 5378122 at 6.

As concerns this Student, in Case No. 2012-0020, Hearing Officer Lazan specifically found, after a review of the record and a three-day hearing, that DCPS denied Student a FAPE by failing to provide an IEP from August 2011 through October 11, 2011; that tutoring services

provided by Judith Ross were appropriate for Student; and that, until Student's IEP team created an educational program for him, DCPS must provide Student 1:1 home instruction for two hours per day, five days a week. I find that this administrative determination constitutes an implied agreement for stay-put purposes under the analysis in *Vinyard, supra.*

Petitioners request that I also include services at the Lindamood-Bell School, ongoing OT services, speech/language therapy services, behavioral support services, and parent counseling and training as components of Student's current educational placement. However, these services, which DCPS has provided voluntarily and/or as administratively-ordered compensatory education are not part of an implemented IEP or an administratively-ordered placement award. Accordingly, I find that there is no "implied agreement" as to stay-put placement at Lindamood Bell, for OT services or for the remaining services sought by Petitioners.

I find therefore that for purposes of the IDEA stay-put provision, Student's current educational placement is 1:1 home instruction for two hours per day, five days a week. I further find that the evidence at the due process hearing established that DCPS has stopped funding the home instruction services, thus working a change in Student's educational placement. Accordingly, as stay-put services, Student is entitled to 1:1 home instruction for two hours per day, five days a week, with such placement funded by DCPS, effective immediately, and which shall continue pending an administrative determination of the due process complaint in this case. DCPS must also reimburse Petitioners for such 1:1 home instruction services obtained for Student, since their complaint was filed on April 8, 2013.

IT IS SO ORDERED.

Date: May 10, 2013                     <u>Peter B. Vaden</u>
                                       Hearing Officer