## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **B.D., a minor, by and through his parents and next friends, Anne and Brantley Davis, *et al.*,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Case No. 13-1223 (RJL)** |
| **DISTRICT OF COLUMBIA,** | ) ) ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

September 25, 2020 [Dkt. ##47, 51]

Plaintiffs Anne and Brantley Davis—as parents and next friends of their son, B.D. (together, "plaintiffs" or "the Davises")—brought this action against the District of Columbia ("defendant" or "the District"), claiming that the District of Columbia Public Schools ("DCPS") committed violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq. See* Compl. [Dkt. #1]. Presently before the Court are plaintiffs' Motion for Summary Judgment ("Pls.' Mot.") [Dkt. #47] on Counts 2, 3, 4, and 5 of the Amended Complaint and defendant's Cross-Motion for Summary Judgment ("Def.'s Mot.) [Dkt. #51]. Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, the Court grants in part and denies in part plaintiffs' Motion for Summary Judgment and grants in part and denies in part defendant's Cross-Motion for Summary Judgment.

## BACKGROUND

The IDEA guarantees children with disabilities the right to a free appropriate public education ("FAPE") that includes special education and related services. 20 U.S.C. § 1400(d)(1)(A); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009). For a qualifying student, a school district must develop an Individualized Education Program ("IEP") that is tailored to the specific needs of the student and that meets certain procedural and substantive requirements. 20 U.S.C. § 1414(d). The IEP must be developed with the participation of the student's parents, regular and special education teachers, and administrators through meetings that follow specific procedures. *See id.* § 1414(d)(1)(B)–(C). The IEP must provide personalized special education with support services sufficient to enable the student to receive an educational benefit. *Board of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 188–89 (1982).

Parents who believe their child's IDEA rights have been violated may file an administrative due process complaint and are entitled to a due process hearing before an impartial hearing officer. 20 U.S.C. § 1415(f). Any party aggrieved by the outcome of the administrative hearing may file a civil action in a district court of the United States. *Id.* § 1415(i)(2)(A). During the pendency of these administrative or judicial proceedings, the IDEA's "stay-put" provision requires that the child "shall remain in [his] then-current educational placement." *Id.* § 1415(j).

This case involves the provision of special education and related services by DCPS for plaintiffs' minor son, B.D. *See* Am. Compl. at 1 [Dkt. #6]. B.D. is a student who suffers from "a complex set of problems and disabling conditions that significantly inhibit

his ability to progress educationally without the support of special education and related services." *Id.* ¶ 10. B.D.'s disabilities include "specific learning disabilities, attention deficit hyperactivity disorder ('ADHD'), various physical health problems, gross and fine motor coordination issues, behavioral problems, sensory dysregulation and inadequate social skills." *Id.* From 2006 through 2009, DCPS funded B.D.'s enrollment at Kingsbury Day School, a private school that was "able to provide special education programming commensurate with his needs." *Id.* ¶¶ 11–12. At the end of the 2008-2009 academic year, however, it was agreed that Kingsbury could no longer meet his special education needs. *Id.* ¶ 13. Plaintiffs' claims in this case stem from their attempts to obtain a FAPE for B.D. and therefore their administrative challenges to the allegedly unsatisfactory IEPs that DCPS has developed for B.D. in the years since 2009.

After DCPS and the Davises agreed in 2009 that Kingsbury Day School could no longer meet B.D.'s needs, the IEP team prepared an IEP on June 9, 2009 recommending that B.D. attend school elsewhere. *Id.* From 2009 to 2011, B.D. received individual, home-based instruction consisting of 21 hours per week of one-on-one tutoring, occupational therapy, speech/language services, and psychological counseling. *Id.* ¶ 14. These services were funded by DCPS. *Id.*

In spring 2011, DCPS and the Davises agreed to attempt to reintroduce B.D. to a school environment. *Id.* ¶ 19. At DCPS's recommendation, B.D. enrolled at the Katherine Thomas School, a private full-time special education school, for a 30-day trial period beginning on August 29, 2011. *Id.*; Pls.' Statement of Material Facts as to Which No Genuine Issue Exists ("Pls.' SMF") ¶ 13 [Dkt. #47-1]. However, this trial period was

unsuccessful. Am. Compl. ¶ 20; Pls.' SMF ¶ 13. DCPS then developed an IEP for B.D. that would place him at The Children's Guild, a facility for children with autism and/or emotional or behavioral problems. Am. Compl. ¶ 20; Pls.' SMF ¶ 15. The Davises rejected this proposed placement and decided instead to provide individual services for B.D. Am. Compl. ¶ 21. DCPS, however, refused to fund these services, insisting that B.D. should be attending The Children's Guild. *Id.*

The Davises thus filed a due process complaint on January 9, 2012 regarding DCPS's refusal to pay for B.D.'s individual services. *Id.*; Def.'s Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s SMF") ¶ 47 [Dkt. #51-1]. After a due process hearing, hearing officer Michael Lazan issued his determination on March 9, 2012. *See* Am. Compl., Ex. 1, Hearing Officer Determination (Mar. 9, 2012) ("March 9, 2012 HOD"), *B.D. v. District of Columbia*, Case No. 12-cv-934 [Dkt. #4-1].[1] Among other issues, the hearing officer concluded that B.D. should receive appropriate services including "1:1 home instruction for two hours per day, five days a week," and ordered the IEP to reconvene to determine other appropriate services. *Id.* at 31.

Following the March 9, 2012 HOD, DCPS convened a series of meetings to develop a new IEP for B.D. Am. Compl. ¶ 22; Pls.' SMF ¶¶ 134–47; Def.'s SMF ¶¶ 52–64. After the IEP team's sixth and final meeting on July 24, 2012, DCPS determined that B.D.'s IEP was appropriate and complete. Am. Compl. ¶ 22; Pls.' SMF ¶ 202; Def.'s SMF ¶¶ 67–68. The July 24, 2012 IEP provided goals in mathematics, reading, written expression,

---

[1] Plaintiffs' appeal from the hearing officer's March 9, 2012 determination was litigated in a separate action before this Court entitled *B.D. v. District of Columbia*, Case No. 12-cv-934 (June 7, 2012).

communication, behavioral development, and physical development.  Def.'s SMF ¶¶ 14, 67.  However, the Davises objected to this IEP on several grounds.  Am. Compl. ¶ 23; Pls.' SMF ¶ 202; Def.'s SMF ¶ 69.  Because DCPS's efforts to identify a school for B.D. were unsuccessful, DCPS authorized the Davises to secure tutoring, occupational therapy, speech/language, and psychological services for B.D.  Am. Compl. ¶ 31.

On October 5, 2012, DCPS convened another IEP team meeting and revised B.D.'s IEP to recommend placement in a residential school and to incorporate additional occupational therapy goals.  Am. Compl. ¶ 42; Pls.' SMF ¶ 209; Def.'s SMF ¶ 72.  The Davises continued to object to this new IEP on numerous grounds.  Am. Compl. ¶ 45; Pls.' SMF ¶ 216.  After considering various residential schools, B.D. was accepted to the Devereux Foundation in October 2012.  Am. Compl. ¶ 49; Pls.' SMF ¶¶ 218–19; Def.'s SMF ¶ 85.  Ms. Davis sought to visit Devereux with B.D., but DCPS rejected her request for DCPS to fund the trip.  Am. Compl. ¶ 49.  In February 2013, DCPS then assigned B.D. to Devereux.  Am. Compl. ¶ 50; Pls.' SMF ¶ 258; Def.'s SMF ¶ 85.

The Davises filed another due process complaint on April 8, 2013 challenging B.D.'s July 24, 2012 and October 19, 2012 IEPs as inappropriate and raising multiple procedural violations during the IEP process.  Am. Compl. ¶¶ 63–64; Def.'s SMF ¶ 90.  After a series of communications between the Davises and Devereux, Devereux withdrew its offer of admission on April 29, 2013.  Am. Compl. ¶ 52; Pls.' SMF ¶ 282; Def.'s SMF ¶ 92.  The due process hearing for plaintiffs' challenge to the July and October 2012 IEPs took place on May 6, 7, and 10, 2013.  Administrative Record 2 ("A.R.2") at 2204, 2497, 2764 [Dkt. ##39–43]; Am. Compl. ¶ 70; Pls.' SMF ¶¶ 281, 338; Def.'s SMF ¶ 94.

On May 5, 2013, the Davises moved the hearing officer to determine B.D.'s "current educational placement" because DCPS had refused to fund B.D.'s individual services, as DCPS insisted that B.D. was currently placed at a residential school. A.R.2 at 1723–25, 1729; Am. Compl. ¶¶ 55–57, 59, 66. On May 10, 2013, hearing officer Peter Vaden adopted the Davises' position that B.D.'s "current educational placement" was the implied agreement in the March 9, 2012 hearing officer's order that B.D. receive 10 hours per week of one-on-one home instruction. *See* Am. Compl., Ex. 3, Order on Pet'r's Mot. to Establish Current Placement at 4–5 (May 10, 2013) ("May 10, 2013 HOD") [Dkt. #6-3]. However, the hearing officer rejected the Davises' request to include additional services such as occupational therapy and psychological counseling in B.D.'s "current educational placement," as he concluded that DCPS provided these services "voluntarily and/or as administratively-ordered compensatory education" rather than as part of an implemented IEP or administratively-ordered placement award. *Id.* at 5. On May 30, 2013, the hearing officer rejected plaintiffs' various challenges to the July and October 2012 IEPs and the IEP process, finding that the IEPs were appropriate and that plaintiffs' other challenges were either moot or not properly before him. *See* Am. Compl., Ex. 4, Hearing Officer Determination (May 30, 2013) ("May 30, 2013 HOD") [Dkt. #6-4].

Meanwhile, as part of the process of developing these IEPs for B.D. in 2012, DCPS staff performed three evaluations of B.D. concerning his occupational therapy, speech/language pathology, and social history. Am. Compl. ¶ 24; Pls.' SMF ¶¶ 151–53. A DCPS psychologist also conducted a psychological evaluation review. Am. Compl. ¶ 24; Pls.' SMF ¶ 19. However, the Davises disagreed with the DCPS psychologist's

evaluation and thus requested an independent psychological evaluation, as permitted by the IDEA. Administrative Record 1 ("A.R.1") at 107 [Dkt. ##37–38]; Pls.' SMF ¶ 32; Def.'s SMF ¶ 6; *see* 20 U.S.C. § 1415(b)(1). On June 12, 2012, DCPS's compliance case manager Isaiah Johnson issued a letter authorizing Ms. Davis to obtain a psychological evaluation regarding B.D.'s "cognitive, educational, clinical and social history." A.R.1 at 221; Pls.' SMF ¶ 34. In this letter, DCPS agreed to reimburse the Davises up to $1,293.50 for the evaluation. A.R.1 at 221; Pls.' SMF ¶ 34; Def.'s SMF ¶ 11. The letter included a list of providers and clinicians who could perform the psychological evaluation at that rate. A.R.1 at 221; Def.'s SMF ¶ 12. On September 24, 2012, the Davises instead requested that DCPS reimburse the Davises in the amount of $3,850 for a psychological evaluation by Dr. William Stixrud. A.R.1 at 281–82; Am. Compl. ¶ 39; Pls.' SMF ¶¶ 38, 39.I.; Def.'s SMF ¶¶ 17–18. DCPS did not approve the Davises' request. Am. Compl. ¶ 40.

The Davises filed a due process complaint on March 7, 2013, challenging DCPS's offer as insufficient to obtain an independent psychological evaluation. A.R.1 at 350–51; Pls.' SMF ¶ 47; Def.'s SMF ¶ 20. On April 24, 2013, DCPS revised its letter to authorize reimbursement of up to $3,000. Pls.' SMF ¶ 50; Def.'s SMF ¶ 21. After a due process hearing on May 8, 2013, hearing officer Charles Carron issued a determination on May 16, 2013 that DCPS's offer was reasonable. *See* Am. Compl, Ex. 2, Hearing Officer Determination (May 16, 2013) ("May 16, 2013 HOD") [Dkt. #6-2].

## PROCEDURAL HISTORY

On September 27, 2013, plaintiffs filed an eight-count Amended Complaint, challenging the hearing officers' May 10, May 16, and May 30, 2013 determinations under

the IDEA, the Rehabilitation Act of 1973, and the ADA, and seeking attorneys' fees in connection with the hearing officer's May 10, 2013 determination in which they partially prevailed. *See* Am. Compl. On November 19, 2013, I granted plaintiffs' motion for a "stay-put" preliminary injunction and required DCPS to "take all actions necessary to provide one-on-one instruction for [B.D.] for two hours per day, five days per week," while judicial proceedings were ongoing. *See* Mem. Order at 4 [Dkt. #16]. This order was to remain in effect unless modified by the court during the pendency of all proceedings in this case. *Id.*

On August 30, 2014, I dismissed plaintiffs' Rehabilitation Act and ADA claims, leaving only Counts 2, 3, 4, and 5 under the IDEA. Mem. Op. [Dkt. #29]. Thereafter, the parties filed cross-motions for summary judgment. *See* Pls.' Mot. for Summ. J. ("Pls.' Mot.") [Dkt. #47]; Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Dkt. #51]. After the motions were fully briefed, on February 24, 2016, I issued an order staying the case pending our Circuit's resolution of a related IDEA action involving B.D. *See* 2/24/2016 Min. Order. Our Circuit Court issued its opinion on March 22, 2016 and remanded that case to the hearing officer for determination of an award of compensatory education for B.D. *See B.D. v. District of Columbia*, 817 F.3d 792 (D.C. Cir. 2016). Once that remand was completed, I lifted the stay in this case on June 3, 2020, *see* Order [Dkt. #74], and invited the parties to supplement their briefing on their cross-motions for summary judgment, which they recently completed on August 10, 2020.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the evidence in the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When evaluating cross-motions for summary judgment, "the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Select Specialty Hosp.-Bloomington, Inc. v. Sebelius*, 774 F. Supp. 2d 332, 338 (D.D.C. 2011) (quoting *GCI Health Care Ctrs., Inc. v. Thompson*, 209 F. Supp. 2d 63, 67 (D.D.C. 2002)).  The Court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The IDEA provides judicial review in federal district court to "[a]ny party aggrieved by the findings and decision" issued in a due process hearing.  20 U.S.C. § 1415(i)(2)(A). The burden of proof rests with the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989)).  The IDEA requires the Court to "receive the records of the administrative proceedings" and "hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(i)–(ii).  In deciding an appeal

from a hearing officer's determination, this Court must grant relief as appropriate, based on a preponderance of the evidence. *Id.* § 1415(i)(2)(C)(iii). While the Court makes an independent determination, it "must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Simmons v. District of Columbia*, 355 F. Supp. 2d 12, 16 (D.D.C. 2004) (quoting *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993)). This review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206.

## ANALYSIS

Plaintiffs moved for summary judgment on Counts 2, 3, 4, and 5 of the Complaint. In Count 2, plaintiffs challenge the hearing officer's May 16, 2013 determination that the amount DCPS offered to reimburse plaintiffs for B.D.'s psychological evaluation was reasonable. In Count 3, plaintiffs seek legal fees and costs for their partially successful efforts to establish B.D.'s "current educational placement" in the hearing officer's May 10, 2013 determination. In Count 4, plaintiffs challenge that hearing officer's May 10, 2013 determination that B.D.'s "current educational placement" was limited to one-on-one instruction and did not include related services such as occupational therapy and psychological counseling. In Count 5, plaintiffs challenge the hearing officer's May 30, 2013 determination that the July and October 2012 IEPs, and the IEP process that generated them, were appropriate. Additionally, in Counts 2, 4, and 5, plaintiffs argue that the administrative due process hearing system violates the IDEA's requirement that the hearing

officer must be independent and neutral.   Defendant opposed plaintiffs' motion for summary judgment and cross-moved for summary judgment.

## I.   Appeal of May 16, 2013 Hearing Officer Determination (Count 2)

Plaintiffs first challenge the hearing officer's May 16, 2013 determination that DCPS's offer to reimburse plaintiff only $1,293.50 was sufficient.  *See* Am. Compl. ¶¶ 78–81; Pls.' Mot. at 7–17.  Plaintiffs contend that the hearing officer disregarded testimony from Dr. Stixrud and other sources that testing B.D. would require more time and effort and thus cost closer to $3,850. Pls.' Mot. at 11–13.  Plaintiffs also argue that the hearing officer erred in concluding that Ms. Davis had exaggerated the difficulty of testing B.D. to the providers recommended by DCPS.  *Id.* at 14–15.

Upon consideration of the hearing officer's determination and the underlying evidence, I conclude that plaintiffs have not shown that the hearing officer erred in finding DCPS's authorized reimbursement amount was reasonable.  The burden of proof is on the party challenging an administrative determination to show that the hearing officer was wrong.  *Reid,* 401 F.3d at 521.

Here, the hearing officer reasonably concluded that DCPS's authorized reimbursement amount was sufficient.  *See* May 16, 2013 HOD ¶ 56.  While the District must fund an independent evaluation at a parent's request, it can establish reasonable cost containment strategies.  71 Fed. Reg. 46,540, 46,690 (Aug. 14, 2016).  As defendant notes, Def.'s Mot. at 9–10, Dr. William Ling, a clinical psychologist, testified that DCPS's offer of $1,293.50 was consistent with rates provided in the surrounding area for a psychological evaluation.  A.R.1 at 1117–18.  In addition, DCPS offered three different providers who

could perform the evaluation within DCPS's rate. *See* May 16, 2013 HOD ¶¶ 33–35.

The evidence and testimony indicate that plaintiffs' request was so high in part because Ms. Davis overstated the difficulty of testing B.D. *See id.* ¶¶ 37, 55. Ms. Davis asked Dr. Stixrud to perform a more expensive neuropsychological evaluation rather than a psychological evaluation, distorting his quoted rate. *Id.* ¶¶ 38, 42–43; A.R.1 at 974, 976, 994–95. Additionally, while Ms. Davis testified that B.D. could be tested for only 40 minutes per day, Dr. Stixrud determined that he could potentially test B.D. in 1.5-hour segments. May 16, 2013 HOD ¶¶ 8, 11; A.R.1 at 1037–38. When Ms. Davis contacted the providers recommended by DCPS, she provided constraints on B.D.'s testing that exceeded those DCPS required. A.R.1 at 954. Plaintiffs have therefore not met their burden of showing that DCPS's authorized reimbursement amount was insufficient to fund an independent evaluation of B.D. *See Reid*, 401 F.3d at 521. Accordingly, summary judgment is granted to defendant on Count 2.

## II.   Appeal of May 10, 2013 Hearing Officer Determination (Count 4)

Plaintiffs also challenge the hearing officer's May 10, 2013 determination that B.D.'s "current educational placement" was limited to one-on-one instruction for 2 hours per day, 5 days per week and did not include other "related services." Am. Compl. ¶¶ 86–89; Pls.' Mot. at 17–21. According to plaintiffs, following the hearing officer's March 9, 2012 determination, the IEP team concluded that B.D. also needed an additional 5 hours per week of one-on-one instruction, as well as occupational therapy, speech/language therapy, and psychological counseling services. Pls.' Mot. at 18. Plaintiffs contend that these other recommendations were "related services" under the IDEA and were included

in B.D.'s last-implemented IEP. *Id.* at 19–20.  In supplemental briefing, plaintiffs note that

a hearing officer recognized in 2017 that one-on-one instruction would not suffice without

these related services.  Pls.' Suppl. Mem. at 11 [Dkt. #76].

Contrary to defendant's suggestion, Def.'s Mot. at 30, case law *requires* including

any necessary related services in a student's current educational placement.  A student's

"current educational placement" under the IDEA is intended to "encompass the *whole*

*range* of services that a child needs." *Spilsbury v. District of Columbia*, 307 F. Supp. 2d

22, 26 (D.D.C. 2004).  "The purpose of the stay-put injunction is to prevent educational

authorities from unilaterally moving a child from his or her current placement," *District of*

*Columbia v. Vinyard*, 901 F. Supp. 2d 77, 83 (D.D.C. 2012), which "falls somewhere

between the physical school attended by a child and the abstract goals of a child's IEP," *id.*

at 85 (quoting *Johnson v. District of Columbia*, 839 F. Supp. 2d 173, 176–77 (D.D.C.

2012)).  Occupational therapy, speech/language therapy, and psychological counseling

services all fall within "related services" under the IDEA. 20 U.S.C. § 1401(26)(A).  While

the hearing officer's March 9, 2012 determination did not itself rule on which specific

related services were needed in addition to B.D.'s one-on-one home instruction, it required

the IEP team to determine the necessary related services and stated that B.D.'s educational

placement was to include those related services.  March 9, 2012 HOD at 29–31.

After our Circuit Court's decision in 2016, the hearing officer on remand determined

in 2017 that the one-on-one home instruction ordered in the March 9, 2012 HOD was *not*

sufficient to provide FAPE without additional services. *See* Pls.' Suppl. Mem., Ex. D,

Hearing Officer Determination on Remand (Sept. 29, 2017) [Dkt. #76-4].  Reviewing the

hearing officer's determination on remand, I find it would be most appropriate to remand this claim to the hearing officer for reconsideration of these subsequent developments and their impact on the hearing officer's interpretation of B.D.'s "current educational placement" as of May 2013.

In light of the remand of Count 4, the Court will defer ruling on plaintiffs' request for attorneys' fees in Count 3 of the Amended Complaint until after the hearing officer's decision on remand.  Plaintiffs sought attorneys' fees for partially prevailing in their position that B.D.'s "current educational placement" was one-on-one home instruction rather than a residential placement. Pls.' Mot. at 39–42.  However, the parties agree that the appropriate amount of attorneys' fees depends on plaintiffs' degree of success in this position. Def.'s Mot. at 30–35; Pls.' Reply to Def.'s Opp'n at 13–15 [Dkt. #56].  Because plaintiffs could prevail further on remand if the hearing officer determines that B.D.'s "current educational placement" also included related services, the appropriate amount of attorneys' fees may also change.  For that reason, the Court defers ruling on plaintiffs' request for attorneys' fees at this time.

## IV.   Appeal of May 30, 2013 Hearing Officer Determination (Count 5)

Plaintiffs challenge the hearing officer's May 30, 2013 determination on seven grounds, Am. Compl. ¶¶ 90–95:

### A. Whether B.D.'s July and October 2012 IEPs Denied Him FAPE

Plaintiffs contend that the hearing officer disregarded substantial evidence regarding B.D.'s unique needs in finding that the July and October 2012 IEPs were appropriate. Pls.' Mot. at 21–28.  Plaintiffs provide several examples of provisions it says DCPS should have

made in the IEP, such as an upward cap of the number of other students in B.D.'s class, measures against loud sounds, and a plan for addressing B.D.'s dietary issues. *Id.* at 23– 24; Pls.' Opp'n to Def.'s Mot. at 10 [Dkt. #57].

Unfortunately for plaintiffs, however, DCPS's IEPs were sufficient to provide FAPE. The Supreme Court has established a two-part test to evaluate the sufficiency of an IEP in providing FAPE: (1) whether the State complied with procedures set forth in the Act, and (2) whether the IEP is reasonably calculated to enable the child to receive educational benefits. *Rowley*, 458 U.S. at 206–07. A student's IEP need not be perfect or optimized but must only be reasonably calculated to enable the student to receive educational benefits. *Kerkam v. Superintendent, D.C. Public Schs.*, 931 F.2d 84, 88 (D.C. Cir. 1991). As defendant notes, however, the goals and objectives provided in the July and October 2012 IEPs were appropriate based on B.D.'s levels of academic and functional performance at the time. Def.'s Mot. at 13–19. Numerous providers testified that B.D.'s IEP would enable him to make reasonable academic progress. A.R.2 at 2397, 2402, 2445, 2446–47. The appropriateness and adequacy of an IEP must be judged as of the time it is offered to the student, not in hindsight. *See S.S. ex rel. Shank v. Howard Road Academy*, 585 F. Supp. 2d 56, 66–67 (D.D.C. 2008). Defendant also points out that B.D.'s Behavioral Intervention Plan, a component of his IEP, addressed many of the behavioral issues that plaintiffs claim the IEP failed to address. A.R.2 at 730–31, 2337–39, 2345; Def.'s Mot. at 16.

Plaintiffs also contend that the hearing officer improperly discounted Ms. Stoff's testimony that the 2012 IEPs were insufficient. Pls.' Mot. at 26–28. I disagree. The

hearing officer reasonably weighed the testimony and concluded that B.D.'s 2012 IEPs provided a free appropriate public education.  May 30, 2013 HOD at 39.  Accordingly, summary judgment is granted to defendant on this issue.

### B.  Whether DCPS Denied Full Participation in Developing His IEP By Limiting Participation of His Providers

Plaintiffs contend that the hearing officer incorrectly found that payment issues had not prevented B.D.'s tutor Judith Ross and occupational therapist Katie Phillips from attending IEP meetings. Pls.' Mot. at 28–29. According to B.D.'s tutor, DCPS had a policy where it would pay B.D.'s providers for only one hour of attendance at IEP meetings. Pls.' SMF ¶ 301. B.D.'s tutor Ms. Ross therefore eventually stopped tutoring B.D. in part because she could not obtain full payment for her services. *Id.* ¶ 298.

While defendant admits that the testimony is unclear as to whether Ms. Ross or Ms. Phillips were fully compensated for their attendance at the IEP meetings, Def.'s Mot. at 19–21, plaintiffs have not met their burden of showing how any failure to fully reimburse B.D.'s providers for their time spent at the IEP meetings impeded his right to a FAPE or caused a deprivation of educational benefits. *See Turner v. District of Columbia*, 952 F. Supp. 2d 31, 38 (D.D.C. 2013). To establish a procedural violation that affected a student's substantive rights, a party must show that the procedural violation "(1) impeded the child's right to a free appropriate public education; (2) significantly impeded the parents' opportunity to participate in the decisionmaking process . . . or; (3) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). Plaintiffs have not shown that the failure to fully reimburse B.D.'s providers affected B.D.'s substantive rights by impeding

his right to a FAPE or causing a deprivation of educational benefits. *See Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006). Defendant correctly notes that Ms. Ross participated in four of the six IEP meetings from May to October 2012 and that Ms. Phillips participated in all six meetings. Def.'s Mot. at 21; *see* A.R.2 at 257, 310, 330, 428–29, 499, 725–26, 860–61, 976. The only possible harm plaintiffs cite—Ms. Phillips' decision to stop tutoring B.D.—is an entirely different harm from the one plaintiffs cited in the due process hearing. As such, defendant is entitled to summary judgment on this issue.

## C. Whether DCPS Violated the IDEA by Withholding Requested Records

Plaintiffs next contend that DCPS denied Ms. Davis access to some of B.D.'s educational records after she asked for them. Pls.' Mot. at 29–30. Under the IDEA, a school district must provide "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child." 20 U.S.C. § 1415(b)(1). Defendant responds, however, that it did not withhold any of B.D.'s educational records. Def.'s Mot. at 23–24. I find that plaintiffs have produced no evidence that DCPS failed to provide any specific educational records requested by the Davises. *See* A.R.2 at 1338. Accordingly, plaintiffs have not met their burden of showing the hearing officer's decision was wrong, and summary judgment is granted to defendant on this issue.

## D. Whether DCPS Violated the IDEA by Refusing to Amend Records

Plaintiffs next contend that DCPS refused to amend certain information in B.D.'s educational records in response to Ms. Davis's request, violating the IDEA. Pls.' Mot. at 30–31. Plaintiffs allege that they asked DCPS to correct many of the facts recited in DCPS's three evaluations of B.D. but that his compliance case manager Isaiah Johnson

refused to correct the documents.  Am. Compl. ¶¶ 24–25.  Plaintiffs further allege that DCPS failed to meet its obligation to notify plaintiffs of procedures they could follow to seek amendment.  Pls.' Mot. at 30–31.

However, as defendant points out, Def.'s Mot. at 24, this Court has no jurisdiction to hear this claim because any inaccurate information in educational records is not actionable under the IDEA.  *See* 20 U.S.C. § 1415(b)(6)(A) (providing for judicial review of claims related to "the identification, evaluation, or educational placement of a child").  The IDEA does not provide a cause of action for inaccurate information in educational records.  The Court therefore awards summary judgment to defendant on this issue.

### E.  Whether the Hearing Officer Violated the IDEA by Addressing the Appropriateness of Devereux

Plaintiffs next contend that the hearing officer made unnecessary findings as to the appropriateness of the Devereux Foundation as a residential placement for B.D.  Pls.' Mot. at 31–33.  The hearing officer made several findings of fact regarding DCPS's and the Davises' interactions with Devereux before ultimately concluding the issue was moot due to Devereux's withdrawal of its offer of admission.  *See* May 30, 2013 HOD at 21–23, 39 n.6.  Plaintiffs also criticize the hearing officer's determination for questioning the Davises' purportedly legitimate concerns about abuse allegations at Devereux.  Pls.' Mot. at 33.

However, Devereux's withdrawal of its offer of admission to B.D. means any issues surrounding the appropriateness of it for B.D. are moot.  On April 29, 2013, about one week before the due process hearing, Devereux informed DCPS that it was no longer willing to accept B.D.: their communications with Ms. Davis had led them to believe that

the Davises were not supportive of B.D. attending Devereux.  *See* A.R.2 at 1688; Am.

Compl. ¶ 52.   The hearing officer's factual findings in his determination, even if

unnecessary and inappropriate, are not actionable, as they did not impact the outcome of

the determination or pose adverse consequences for B.D.  This issue does not qualify for

the exception to mootness where the action is "capable of repetition, yet evading review,"

*Jenkins v. Squillacote*, 935 F.2d 303, 307–08 (D.C. Cir. 1991), as plaintiffs can file another

due process complaint if the types of issues plaintiffs challenged recur.  Summary judgment

must therefore be granted to defendant on this issue.

### F.   Whether DCPS's Policies and Practices Interfered with Delivering FAPE

Plaintiffs also contend that the hearing officer erroneously declined to address

challenges regarding the Davises' limited ability to participate in assessing the

appropriateness of B.D.'s proposed placements at residential schools such as Devereux.

Pls.' Mot. at 34–37.  With their only option for challenging a placement being to file a due

process complaint, plaintiffs argue that DCPS's policies effectively removed important

issues from consideration by the IEP team.  *Id.* at 34.  Plaintiffs also contend that DCPS's

failure to fund B.D.'s pre-enrollment visit to residential facilities has caused him to lose

out on promising opportunities for residential placement.  *Id.* at 36–37.

Again, here, the issue of the appropriateness of Devereux is moot.  Plaintiffs have

failed to show how the alleged procedural violation impacted B.D.'s receipt of a FAPE.

*See Lesesne*, 447 F.3d at 834.  The Court therefore must award summary judgment to

defendant on this issue.

### G. Misleading Hearing Officer as to Voluntary Provision of Educational Services

Plaintiffs next contend that DCPS misled the hearing officer when a DCPS representative indicated that B.D. could take advantage of an interim services plan. Pls.' Mot. at 37–39. According to plaintiffs, DCPS withdrew its interim services offer shortly after the hearing portion concluded. *Id.* (citing Pls.' SMF ¶ 339).

As defendant responds, however, DCPS never promised to provide interim services. Def.'s Mot. at 29–30. DCPS counsel stated that if no residential placement has been identified, "an IEP team can be convened to discuss an interim IEP while the OSSE looks for a new location of services, a new residential location for the student." A.R.2 at 2912. Further, plaintiffs have not shown that the hearing officer relied on any representations made by DCPS counsel as to the provision of interim services. Plaintiffs' speculation that "it is possible" that the hearing officer's decision "was attributable to his satisfaction that a [higher] level of service would continue," Pls.' Mot. at 38, is not sufficient to meet their burden. As such, defendant is entitled to summary judgment on this issue.

### V.    Challenge to Administrative Due Process Hearings (Counts 2, 4, 5)

Finally, plaintiffs challenge the administrative due process hearing system that DCPS uses, contending that it violates the IDEA's requirement that a hearing officer must be independent and neutral. *See* Am. Compl. ¶¶ 73, 80, 88, 92; Pls.' Mot. at 2–7. The IDEA requires that the hearing officer presiding over a due process hearing must not be "an employee of the State educational agency or the local educational agency involved in the education or care of the child" and must not have a personal or professional interest in the outcome of the hearing. 20 U.S.C. § 1415(f)(3)(A)(i). According to plaintiffs, special

education hearing officers are employees rather than independent contractors of D.C.'s Office of the State Superintendent of Education ("OSSE"), as their contracts allow OSSE to control the manner in which the officers performed their work.  Pls.' Mot. at 3–7. Plaintiffs also contend that these contracts create personal or professional interests in the outcome of each decision. *Id.* at 7.

However, defendant correctly objects that this Court lacks jurisdiction over plaintiffs' claim, as plaintiffs did not exhaust their administrative remedies by first presenting the claim to the respective hearing officer. Def.'s Mot. at 35–39.  Indeed, I have no jurisdiction over an IDEA claim unless plaintiffs have exhausted their administrative remedies by presenting the claim to the hearing officer at the due process hearing. *Holdzclaw v. District of Columbia*, 524 F. Supp. 2d 43, 47 (D.D.C. 2007); *Cox v. Jenkins*, 878 F.2d 414, 419–20 (D.C. Cir. 1989).  To be sure, some cases have allowed systemic IDEA challenges to be presented first in federal district court.  However, this claim is not like the class action in *J.S. v. Attica Central Schools*, 386 F.3d 107 (2d Cir. 2004), where the plaintiffs raised a systematic failure of a school district to implement multiple students' IEPs, making a district court case the only viable route to raise such systemic challenges. *See id.* at 113–15.  Here, plaintiffs' legal challenge to the impartiality of the particular hearing officer adjudicating an administrative challenge could have been presented to the hearing officer and addressed in the first instance.  For this reason, plaintiffs' challenge to the administrative due process hearing system in Counts 2, 4, and 5 is dismissed without prejudice.

## CONCLUSION

For these reasons, summary judgment is awarded to defendant on Counts 2 and 5. The issues raised in Count 4 regarding the hearing officer's May 10, 2013 determination are remanded to the hearing officer for reconsideration in light of the hearing officer's 2017 determination on remand.  Accordingly, the Court defers ruling on the attorneys' fees issue presented in Count 3 until the completion of that remand.  Plaintiffs' claim in Counts 2, 4, and 5 that the administrative due process system violates the IDEA is dismissed without prejudice because plaintiffs failed to exhaust their administrative remedies.  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge