## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **B.D., by and through his parents** | ) | |
| **and next friends, ANNE DAVIS and** | ) | |
| **BRANTLEY DAVIS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Case No. 13-1223 (RJL)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION
(September *15*, 2023) [Dkt. ## 97, 99]

In one of their many administrative actions against District of Columbia Public Schools ("DCPS"), Anne and Brantley Davis sought and obtained an administrative determination of the educational placement of their disabled son, B.D., as of when they filed the action. Disagreeing with the determination, the Davises challenged it in this Court, and the Court remanded for reconsideration. On remand, the hearing officer only partially expanded B.D.'s educational placement, and so they have returned yet again to this Court with more objections. They also claim attorneys' fees and costs for partially prevailing in establishing B.D.'s educational placement, which the District of Columbia does not oppose. For the following reasons, the hearing officer was correct not to expand the educational placement any further, and the Davises are entitled to attorneys' fees and costs, but not quite as much as they claim. Accordingly, the Court will GRANT the District's motion for partial summary judgment and will GRANT IN PART and DENY IN PART the Davises' motion for summary judgment.

## BACKGROUND

### I.     Legal Background

The Individuals with Disabilities Education Act ("IDEA") provides federal funding to states, the District of Columbia, and territories on the condition that they provide a free appropriate public education ("FAPE") to all children with disabilities.   20 U.S.C. § 1412(a)(1)(A).  "The 'primary vehicle' for securing an appropriate public education is the child's 'individualized education program,' which is commonly referred to as an 'IEP.'"  *Olu-Cole ex rel. M.K. v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 523 (D.C. Cir. 2019) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).  "Once the IEP is developed, the school system must provide an appropriate educational placement that comports with the IEP."  *G.B. v. District of Columbia*, 78 F. Supp. 3d 109, 112 (D.D.C. 2015) (Kollar-Kotelly, J.).

When parents and school officials disagree over a child's educational placement, formal procedures govern the resolution of those disputes, starting with the filing of a "due process complaint."  20 U.S.C. § 1415(b)(7)(A), (c)(2).  Pursuant to what is called the "stay-put" provision, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child."  *Id.* § 1415(j).

### II.    Case History Until 2020 Remand

The present dispute has its roots in early 2012, when the Davises filed a due process complaint after they struggled to agree with DCPS on B.D.'s educational placement for part of 2011.  A.R. at 1433–35, 1438–41.  In that action, a Hearing Officer Determination

was issued in March 2012 ("March 2012 HOD"), concluding that DCPS had denied B.D. a FAPE from August 2011 through the 2011–12 school year. *Id.* at 1451–55. The hearing officer ordered B.D.'s IEP team to create a new IEP for him; in the interim, DCPS was to provide one-on-one home instruction for two hours per day, five days per week. *Id.* at 1463. He also found that the occupational therapy for which the Davises had been paying out of pocket was an appropriate service for B.D., and so he ordered DCPS to reimburse the Davises for the expenses they had incurred and to provide occupational therapy for another three months, five hours per week, as compensatory education. *Id.* at 1446–47, 1456–58, 1463. Pursuant to that order, a new IEP for B.D. was finalized in July 2012 and then amended in October 2012, but the Davises objected to both iterations. *Id.* at 206–28, 237–61, 2213–17.

The next April, the Davises filed another due process complaint challenging those July and October IEPs and then filed a motion in that proceeding for a determination of B.D.'s then-current educational placement for purposes of the IDEA's stay-put provision. *Id.* at 1489–95. In an order that May ("May 2013 Order"), the hearing officer found that, because B.D. did not have an operative IEP at the time, the March 2012 HOD would serve as an implied agreement as to B.D.'s placement for stay-put purposes. *Id.* at 1498. B.D.'s then-current educational placement would thus be the one-on-one home instruction for two hours per day, five days per week, that was ordered on an interim basis in March 2012. *Id.* at 1499. But the Davises did not get everything they asked for: the hearing officer declined their request to include occupational therapy, speech/language therapy, behavioral support services, and parent counseling and training, which were included in the July 2012 IEP.

*Id.* at 1490, 1499.  Because DCPS had provided those services "voluntarily and/or as administratively-ordered compensatory education," they could not be part of an implied agreement as to B.D.'s placement. *Id.* at 1499.

The Davises filed this action against the District in August 2013.  In their Amended Complaint, they alleged eight violations of the IDEA, the Rehabilitation Act of 1973, and the Americans with Disabilities Act.  Am. Compl. [Dkt. #6] ¶¶ 74–123.  After the Court granted in part the District's motion to dismiss, *B.D. v. District of Columbia* (*B.D. I*), 66 F. Supp. 3d 75, 79–81 (D.D.C. 2014), four claims remained (Counts 2, 3, 4, and 5), all alleging violations of the IDEA.  The parties subsequently filed cross-motions for summary judgment, and the Court granted summary judgment for the District on Counts 2 and 5. *B.D. v. District of Columbia* (*B.D. II*), 548 F. Supp. 3d 222, 237 (D.D.C. 2020).

On Count 4, however, the Court remanded to the hearing officer.  *Id.* at 233.  That count alleges that the May 2013 Order failed to include the full range of services making up B.D.'s then-current educational placement—beyond the one-on-one home instruction for two hours per day, five days per week.  Am. Compl. ¶¶ 86–89.  The Court remanded for two reasons.  First, the July 2012 IEP, which added the services the Davises wanted to be included, was finalized pursuant to the same March 2012 HOD that served as the implied agreement for stay-put purposes, and the Court wondered whether those services should have been considered part of B.D.'s educational placement.  *B.D. II*, 548 F. Supp. 3d at 233.  Second, the Court accepted the Davises' representation that, in 2017, the same hearing officer observed in a separate proceeding involving B.D. that one-on-one home

4

instruction was alone an inadequate FAPE in 2012. *Id.*[1]  Remand was thus appropriate for the hearing officer to consider "these subsequent developments and their impact on the hearing officer's interpretation of B.D.'s 'current educational placement.'" *Id.*

That decision necessitated deferral on Count 3, which claims attorneys' fees for prevailing in establishing B.D.'s educational placement, because those fees could continue to grow on remand. *Id.*; *see* 20 U.S.C. § 1415(i)(3)(B).

### III.   Procedural Background Since 2020 Remand

In a Hearing Officer Decision on Remand issued in May 2021 ("May 2021 HODR"), the hearing officer did not believe that those "subsequent developments" had much impact on his prior thinking on B.D.'s educational placement.  First, as to the July 2012 IEP, most of the related services it proposed were not (and could not have been) considered by the hearing officer months earlier in the March 2012 HOD and thus could not be part of an implied agreement as to B.D.'s placement.  A.R. at 16–17.  Moreover,

---

[1] That proceeding was also on remand, after the D.C. Circuit held that the occupational therapy ordered in the March 2012 HOD was insufficient compensatory education for the FAPE denial from August 2011 through the 2011–12 school year. *B.D. v. District of Columbia*, 817 F.3d 792, 799 (D.C. Cir. 2016). As part of its decision, the D.C. Circuit noted that, during the period of the FAPE denial, the Davises had provided some tutoring and occupational therapy at their own expense but those services did not account for everything that B.D. needed, according to an IEP created by DCPS. *Id.* at 798–99.  In a hearing on remand, the hearing officer asked the parties which IEP the D.C. Circuit was referring to, "because there wasn't an IEP" in place at the time.  A.R. at 1315–16.  The parties confirmed it was an IEP created in October 2011, which was not implemented. *Id.* at 1316–17.

Upon closer inspection, the hearing officer did not, as the Davises claimed, "recogni[ze], in 2017, that the 1:1 instruction ordered for B.D. in 2012 was insufficient and would not have been effective without the other supportive services he omitted when he decided that only 1:1 instruction, without related services, was B.D.'s 'current placement.'" Pls.' Suppl. Mem. in Supp. of Mot. for Summ. J. [Dkt. #76] at 11.  The hearing officer was simply trying to figure out which IEP the D.C. Circuit was referring to, not second-guessing any prior decision that one-on-one instruction was adequate on its own.

because the Davises rejected the July 2012 IEP, the related services it proposed could not be considered part of B.D.'s "IEP in place" thereafter. *Id.*

The one exception was B.D.'s occupational therapy.  Unlike the other related services, occupational therapy at five hours per week had been provided prior to, and was found to be appropriate in, the March 2012 HOD. *Id.* at 15–16.  It therefore should have been considered part of the implied agreement as to B.D.'s placement for stay-put purposes, alongside the one-on-one home instruction. *Id.*  To compensate for that omission, the hearing officer awarded to the Davises the value of the occupational therapy that B.D. missed, $93,750, to be allocated toward any services that B.D. now needs in his current residential placement. *Id.* at 18–21.

As to the 2017 proceeding that the Court remanded for the hearing officer to consider as well, the hearing officer did not think it was relevant to the proceeding here. *Id.* at 1708–09.  That separate proceeding presented the issue of what compensatory education was appropriate for DCPS's denial of a FAPE from August 2011 to the March 2012 HOD—"a wholly separate question from" the one here of what B.D.'s educational placement was when the Davises initiated the administrative action being reviewed in this case, in April 2013. *Id.*

Receiving less than they hoped for on remand, the Davises came back to this Court and filed a Supplemental Complaint adding two more causes of action.  Count 9 alleges that the May 2021 HODR incorrectly excluded the other related services from B.D.'s educational placement as of April 2013 and failed to provide specific instructions to DCPS for complying with the order to reimburse the $93,750 to the Davises.  Suppl. Compl. [Dkt.

#86] ¶¶ 124–144.  Count 10 claims additional attorneys' fees—beyond those claimed in

Count 3—for enforcing the May 2013 Order after Count 3 was raised in the Amended

Complaint, and for partially prevailing on remand in getting occupational therapy added to

B.D.'s educational placement as of April 2013.  *Id.* ¶¶ 145–151.  Summary judgment

briefing on Counts 3, 9, and 10 followed thereafter.  Pls.' Mot. for Summ. J. ("Pls.' Mot.")

[Dkt. #97]; Def.'s Partial Opp'n to Pls.' Mot. and Cross-Mot. for Summ. J. ("Def.'s Mot.")

[Dkt. #99]; Pls.' Mem. in Opp'n to Def.'s Mot. and in Reply to Def.'s Opp'n to Pls.' Mot.

("Pls.' Reply") [Dkt. #101]; Def.'s Reply to Pls.' Opp'n to Def.'s Mot. [Dkt. #103].  The

parties' cross-motions for summary judgment are now ripe for decision.

### LEGAL STANDARD

When a party is "aggrieved by the findings and decision" of a hearing officer and

brings an action in federal court, the court "(i) shall receive the records of the administrative

proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its

decision on the preponderance of the evidence, shall grant such relief as the court

determines is appropriate."  20 U.S.C. § 1415(i)(2)(A), (C).  That statutory command to

hear additional evidence and to apply a preponderance standard "'plainly suggest[s] less

deference than is conventional' in administrative proceedings."  *Reid ex rel. Reid v. District*

*of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (alteration in original) (quoting *Kerkam*

*v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)).  Still, "courts must give 'due weight' to

the administrative proceedings," and "[f]actual findings from the administrative

proceeding are to be considered prima facie correct."  *Z.B. v. District of Columbia*, 382 F.

Supp. 3d 32, 41 (D.D.C. 2019) (Kollar-Kotelly, J.) (first quoting *Bd. of Educ. v. Rowley*,

458 U.S. 176, 206 (1982); and then quoting *Roark v. District of Columbia*, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (Bates, J.)).

"A motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *D.R. v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009) (Bates, J.). The party challenging the hearing officer's decision has "the burden of persuading the court that the hearing officer was wrong," and if the Court upsets the officer's decision, it "must at least explain its basis for doing so." *Reid*, 401 F.3d at 521 (quoting *Kerkam*, 862 F.2d at 887).

## DISCUSSION

### I.      Count 9

The hearing officer's addition of occupational therapy—but no more—to B.D.'s educational placement as of April 2013 was appropriate. Because no IEP was in place then, "an administrative determination in favor of the parents [could] constitute[] an implied agreement as to a placement for stay-put purposes, so long as the hearing officer made findings on the merits that the school system had failed to provide a FAPE and that the private program chosen by the parents was appropriate." *District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 86 (D.D.C. 2012) (Kollar-Kotelly, J.). That determination here was the March 2012 HOD, in which the hearing officer concluded that DCPS had failed to provide a FAPE and that the one-on-one home instruction and occupational therapy that B.D. was receiving were appropriate. A.R. at 1457, 1462–63. The hearing officer here was therefore correct to decide on remand that occupational therapy should

have been included in B.D.'s educational placement as of April 2013, alongside one-on-one home instruction. *Id.* at 15–16.

The hearing officer was also correct to exclude from B.D.'s educational placement as of April 2013 the other related services that B.D.'s July 2012 IEP deemed appropriate. The IDEA's stay-put provision is a procedural protection meant to "maintain[] the educational status quo for students with disabilities until proceedings have concluded." *Olu-Cole*, 930 F.3d at 523; *see* 20 U.S.C. § 1415(j). And the status quo for B.D. after the March 2012 HOD did not include those related services. They were not added to B.D.'s IEP until July 2012, and the Davises rejected them. A.R. at 2213–17. Accordingly, notwithstanding their efforts to prove that B.D. needed those related services and to quantify their value, Pls.' Mot. at 29–35, 37–38,[2] they simply were not part of his educational placement when the Davises filed their administrative action in April 2013. *See G.B.*, 78 F. Supp. 3d at 113 (observing that challenged IEP does not serve as educational placement for stay-put purposes).

The hearing officer was also correct to conclude that the 2017 proceeding involving B.D. was not relevant to the stay-put decision here. The Davises point to a hearing in that proceeding at which the hearing officer purportedly recognized that one-one-one home instruction was alone an insufficient FAPE for B.D. Pls.' Mot. at 24–25; Pls.' Reply at 25–29. As already noted, that is simply not what the hearing officer did, *see supra* note 1, and it would be irrelevant to a stay-put decision anyway. "[B]y definition, a court's stay-

---

[2] Citations to the parties' briefs refer to the page number in the ECF stamp at the top of each page.

put ruling is limited to maintenance of a child's current placement pending proceedings; it does not constitute a determination on the merits as to the adequacy of that placement or even to the child's entitlement to services in the first instance." *Vinyard*, 901 F. Supp. 2d at 88. The 2017 proceeding was thus correctly ignored by the hearing officer here.[3]

That decision did not, as the Davises argue, violate the mandate rule. The mandate rule "renders a lower court or decisionmaker, including an administrative agency, 'without power to do anything . . . contrary to either the letter or spirit of' a higher court's 'mandate construed in the light of the opinion of the court deciding the case.'" *Am. Waterways Operators v. Regan*, 590 F. Supp. 3d 126, 137 (D.D.C. 2022) (Mehta, J.) (omission in original) (quoting *City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 346 (D.C. Cir. 1977)); *see* Pls.' Br. at 27–29. The rule applies only to issues that were actually decided by the higher court, *Maggard v. O'Connell*, 703 F.2d 1284, 1289 (D.C. Cir. 1983), and the Court did not actually decide which related services were part of B.D.'s educational placement as of April 2013. It simply remanded for the hearing officer to reconsider as much in the first instance. *B.D. II*, 548 F. Supp. 3d at 233. The hearing officer was thus free to render his own decision. 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478.3, at 713–15 (3d ed. 2019) (explaining that

---

[3] The hearing officer distinguished B.D.'s stay-put rights from the ultimate question to be resolved in that separate proceeding—what compensatory education would suffice to remedy the FAPE denial from August 2011 to March 2012—even though the Davises have focused on the exchange in the earlier hearing in that proceeding. A.R. at 1708–09. Still, the same reasoning applies: that question of compensatory education is different from the question here of what B.D.'s educational placement was as of April 2013. *See Olu-Cole*, 930 F.3d at 523, 531.

"[a]n express direction to reconsider on remand" "leaves the trial court [or agency here] free to decide matters that were not resolved on appeal").

Setting aside the scope of B.D.'s educational placement as of April 2013, the Davises also claim error in the hearing officer's order for DCPS to "promptly issue funding authorization" to the Davises to obtain independent educational services for B.D., A.R. at 20–21, insofar as it "gives DCPS excessive control over how the funds could be used and creates the danger that DCPS could entirely thwart the purpose of the award." Pls.' Mot. at 35. They think the funds should instead be placed in a "services bank" administered by a neutral third party. *Id.* at 35–36. But their proposal lacks legal support, and their worries are unfounded and speculative. DCPS has allowed the Davises to use the funds toward any independent provider of their choice and, if they do not use the funds by September 30, 2023, to request an extension so that the Davises can continue to use funds while DCPS complies with its anti-deficiency obligations not to authorize funds before an appropriation. Def.'s Mot. Ex. 2 [Dkt. #99-2]; *see* D.C. Code § 47-355.02. There is simply no indication that "it is inappropriate or impractical for DCPS to fulfill its IDEA obligations," Pls.' Mot. at 36, and thus no error from the hearing officer in ordering DCPS to issue funding authorization.[4]

---

[4] The Davises also argue that the funds to which they are entitled should be adjusted for inflation since the May 2021 HODR was issued. Pls.' Mot. at 38–39. But they cite no authority providing for awards of compensatory education to be adjusted for inflation. *Id.*; *see also* Pls.' Reply at 33 (conceding that "we are unaware of a reported IDEA decision in which the amount required to compensate for a FAPE denial was adjusted to account for the passage of time and intervening inflation"). The Court declines to be the first to do so.

## II.   Counts 3 and 10

The Court will award $163,793.88 in prevailing-party attorneys' fees and costs,

even though the District does not oppose the Davises' claim for $170,806.51.  Am. Compl.

¶¶ 82–85; Suppl. Compl. ¶¶ 145–151; Pls.' Mot. at 39–47; Def.'s Mot. at 3.  The IDEA

allows a court, in its discretion, to award attorneys' fees and costs "to a prevailing party

who is the parent of a child with a disability," subject to certain exceptions not applicable

here.  20 U.S.C. § 1415(i)(3)(B)(I), (D)–(E).  The Davises prevailed here by obtaining

"some form of judicial relief" in successive decisions that B.D.'s educational placement as

of April 2013 included one-on-one home instruction and occupational therapy.  *Douglas v.*

*District of Columbia*, 67 F. Supp. 3d 36, 41–42 (D.D.C. 2014) (Friedman, J.).

The fees awarded shall be based on rates prevailing in the community for the kind

and quality of services furnished, and no bonus or multiplier may be used in calculating

the fees.  20 U.S.C. § 1415(i)(3)(C).  The "basic formula" is to multiply the number of

hours reasonably expended by a reasonable hourly rate.  *DL v. District of Columbia*, 924

F.3d 585, 588 (D.C. Cir. 2019).  The Davises claim the following hours and rates, and the

Court has calculated the total fees from there:

| Attorney | Hourly Rate | Hours Worked | Total Fees |
|---|---|---|---|
| Diana M. Savit | $495.00 | 282.5 | $139,837.50 |
| Diana M. Savit at 75 percent of rate[5] | $371.25 | 36.8 | $13,662.00 |
| Diana M. Savit at 15 percent of rate | $74.25 | 20.2 | $1,499.85 |
| Diana M. Savit at paralegal rate | $140.00 | 54.7 | $7,658.00 |
| Harvey Schweitzer | $300.00 | 1.6 | $480.00 |
| Lisa Seltzer Becker | $325.00 | 0.1 | $32.50 |
| **Total** | | **395.9** | **$163,169.85** |

---

[5] Ms. Savit billed some work at reduced rates to account for only partial success or to avoid double-counting with another case.  Pls.' Mot. at 42.

Pls.' Mot. at 20–21, 42; Savit Decl. [Dkt. #97-9] ¶¶ 12, 14, 19, 24.  Everyone agrees that the hourly rates and the number of hours expended are reasonable.  Still, the fees claimed from each attorney's work simply do not add up to the $170,182.48 total claimed by the Davises; they add up to $163,169.85.  The Davises also claim $624.03 in costs, including a filing fee, printing/copying, postage, and travel.  Pls.' Mot. at 21–22, 40; Savit Decl. ¶ 25. As the District agrees, those costs are reasonable.  *See Coates v. District of Columbia*, 79 F. Supp. 3d 42, 51 (D.D.C. 2015) (Collyer, J.).

In total, the Court will award $163,793.88 in attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, the Court will GRANT the District's motion for partial summary judgment; will GRANT IN PART and DENY IN PART the Davises' motion for summary judgment as to Counts 3 and 10, with an award of $163,793.88; and will DENY their motion as to Count 9.  An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge